**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

|                                               |     |                                   |
|-----------------------------------------------|-----|-----------------------------------|
| BENITA JONES-DAVIDSON, Plaintiff,             | *   |                                   |
|                                               | *   |                                   |
| v.                                            | *   | Civil Action No. 13-cv-02284-AW   |
|                                               | *   |                                   |
| PRINCE GEORGE'S COUNTY COMMUNITY COLLEGE, Defendant. | *   |                                   |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

Pending before the Court is Defendant Prince George's County Community College's

Motion to Dismiss Plaintiff's Complaint for failure to state a claim. Doc. No. 6. The Court has

reviewed the motion papers and concludes that no hearing is necessary. *See* Loc. R. 105.6 (D.

Md. 2011). For the reasons articulated below, Defendant's Motion will be GRANTED-IN-

PART and DENIED-IN-PART.

## I.     BACKGROUND

The following facts are taken from Plaintiff's Complaint. Plaintiff Benita Jones-

Davidson is a mixed race woman in her early fifties with a Master's degree in network

engineering. Plaintiff has been employed by Defendant Prince George's County Community

College ("PGCCC") since September 2006 as a network engineer in the Administrative

Technology Services department. Plaintiff also holds an adjunct position on PGCCC's faculty.

Currently, Plaintiff is the only female network engineer in her department, which also employs

approximately five male network engineers. From 2006 through January 2010, Plaintiff worked

in her department without incident and received the highest ratings in her annual job performance evaluations.

In January 2010, Plaintiff complained about being denied overtime pay based on her gender. By April 2010, management stopped acknowledging her daily accomplishments. As part of her responsibilities, Plaintiff reports her daily activities to the management of her department. Following her complaints about overtime pay, however, management stopped responding to these daily e-mails. On December 3, 2010, all of the network engineers in Plaintiff's department received annual job performance evaluations except for Plaintiff. Plaintiff filed a complaint with PGCCC alleging retaliation on December 6, 2010. Plaintiff received her evaluation on March 22, 2011, but it contained "disparaging comments." Prior to raising her complaint to PGCCC, Plaintiff was given challenging assignments that drew on her education and experience. After her complaint, however, Plaintiff was frequently not given any assignments.

On April 13, 2011, Plaintiff received a written warning and a one-day suspension. The following day, Plaintiff filed a sex and retaliation complaint with the Equal Employment Opportunity Commission ("EEOC"). Since the filing of her EEOC complaint, Plaintiff is no longer given challenging assignments. Her duties and responsibilities are currently limited to assisting other network engineers when they encounter problems, and Plaintiff receives no official credit for this work. When Plaintiff is given an assignment, her requests for approval are ignored by management, hampering her ability to complete such assignments. Plaintiff is no longer invited to important meetings and is the target of disparaging e-mails from her colleagues and management.

## II.     STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though he might uncover direct evidence during discovery. *Id.* at 511-12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery "it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 512; *see also Twombly*, 550 U.S. at 569-70 (explaining that *Swierkiewicz* is consistent with more recent case law).[1] "While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (emphasis added).

## III.    ANALYSIS

Plaintiff alleges that Defendant unlawfully retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* As an initial matter, the Court rejects Defendant's argument that Plaintiff's Title IX claim should be dismissed because it is duplicative of the Title VII claim. The Fourth Circuit has not squarely addressed whether Title VII preempts

---

[1] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *see Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009), the analysis cited herein remains good law. *See Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination.") (internal quotations omitted) (citations omitted).

employment discrimination claims brought under Title IX.[2]  However, there is some authority

within this circuit suggesting that Title VII and Title IX employment discrimination claims can

proceed simultaneously, particularly where the plaintiff seeks equitable relief, as Jones-Davidson

does in this case.  The Fourth Circuit has noted that the implied right of action for enforcement

of Title IX "extends to employment discrimination on the basis of gender by educational

institutions receiving federal funds."[3]  *Preston v. Commonwealth of Va. ex rel. New River Cmty.*

*Coll.*, 31 F.3d 203, 206 (4th Cir. 1994).  In *Preston*, the plaintiff brought retaliation claims

against her employer under both Title VII and Title IX.  *Id.* at 204.  In an earlier unpublished

opinion, the Fourth Circuit reversed the district court's initial dismissal of the plaintiff's claims,

ordered the reinstatement of both claims, and remanded for further proceedings.  *Preston v.*

*Commonwealth of Va.*, 941 F.2d 1207 (Table), 1991 WL 156224 (4th Cir. Aug. 18, 1991).  With

respect to the Title IX claim, although it declined to decide whether compensatory damages

would be available, the court nevertheless concluded that the district court could provide

equitable relief to the plaintiff if she could prove a Title IX violation.  *Id.* at *2-3; *see also*

*Bartges v. Univ. of N.C. at Charlotte*, 908 F. Supp. 1312, 1332 (W.D.N.C. 1995) (concluding

that under *Preston*, plaintiff could bring a Title IX employment discrimination claim, but

dismissing it for the same reasons it dismissed the Title VII claim).  Accordingly, the Court

declines to find that Plaintiff's Title IX claim is duplicative of her Title VII claim.

The Court will therefore proceed to Defendant's argument that Plaintiff's Complaint

should be dismissed for failure to state a claim.  Title VII makes it unlawful for "an employer to

---

[2] There appears to be a split of authority on this issue.  *Compare Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 861-62 (7th Cir. 1996) (holding that Title VII preempted plaintiff's claims for equitable relief under Title IX), *abrogated on other grounds*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) *and Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995) (holding that Title VII barred plaintiff's damages claims brought under Title IX) *with Toth v. Cal. Univ. of Penn.*, 844 F. Supp. 2d 611, 635-36 (W.D. Pa. 2012) (permitting Title IX and Title VII claims to proceed simultaneously).
[3] There is no dispute in this case that PGCCC is a recipient of federal funds.

discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Courts look to case law interpreting Title VII for guidance in evaluating claims brought under Title IX. *See, e.g.*, *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007); *Preston*, 31 F.3d at 206-07; *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 665-68 (D. Md. 2012). Accordingly, the Court will review Plaintiff's Title VII and Title IX retaliation claims together.

To establish a prima facie case for retaliation, Plaintiff must show that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the asserted adverse action. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). For the purposes of its Motion to Dismiss, Defendant assumes, without conceding, that Plaintiff has sufficiently pled the existence of the first element. The issue before the Court is whether the Complaint is deficient for failing to plead the second or third elements of a retaliation claim.

With respect to the second element, the Supreme Court has held that "a plaintiff a must show that a reasonable employee would have found the challenged [adverse] action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations and citations omitted). The Court emphasized the importance of separating "significant from trivial harms," and noted that an employee's decision

6

to report allegedly discriminatory behavior "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* "By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.* at 69-70.

Regarding the third element, "a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). Where the only indication of causal connection is temporal proximity, the time between an employer's knowledge of protected activity and an adverse employment action must be "very close." *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (per curiam) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)). A longer passage of time generally tends to negate the inference of a causal connection. *See, e.g.*, *Clark Cnty.*, 532 U.S. at 273; *Price*, 380 F.3d at 209.

Even when construed in a light most favorable to Plaintiff, the factual allegations in the Complaint fall far short of supporting a plausible, prima facie retaliation claim. Plaintiff's first protected activity allegedly occurred in January 2010 when she complained about being denied overtime pay on the basis of her gender. Doc. No. 1 ¶ 16. She alleges two apparently retaliatory actions following her overtime complaint. First, "[b]y April 2010, management stopped acknowledging [her] daily accomplishments" and "stopped responding to her daily e-mails." *Id.* ¶ 17. Second, Plaintiff alleges that on December 3, 2010, everyone in her department received job performance evaluations except for her. *Id.* ¶ 18. These are the type of petty slights and minor annoyances that cannot be deemed materially adverse employment actions under

*Burlington. See, e.g.*, *Adams v. Upper Chesapeake Med. Ctr., Inc.*, No. AMD 08-346, 2009 WL 997103, at *4-5 (D. Md. Apr. 14, 2009) (holding that plaintiff did not suffer materially adverse employment action where she alleged, *inter alia*, that her supervisor avoided her and refused to talk to her and she suffered a minor delay in receiving documents from the human resources department).

Plaintiff allegedly engaged in protected activity a second time on December 6, 2010, when she filed a complaint with PGCCC alleging retaliation. Doc. No. 1 ¶ 19. On March 22, 2011, Plaintiff finally received her job performance evaluation, which contained "disparaging comments." *Id.* ¶ 20. However, courts in this district have repeatedly held that mere criticism from supervisors does not constitute materially adverse employment action. *See, e.g.*, *Hawkins v. Leggett*, Case No. 12-cv-623 AW, 2013 WL 3218964, at *7 (D. Md. June 24, 2013) (rejecting plaintiff's argument that being yelled at or "called out" by a supervisor in front of his coworkers constituted a materially adverse employment action); *Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011) (plaintiff's allegations that he was "yelled at" and "criticized" were not materially adverse employment actions); *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 784 (D. Md. 2010) (noting that "demeaning and disparaging comments by a supervisor . . . do not constitute an adverse employment action"); *Blount v. Dep't of Health & Human Servs.*, 400 F. Supp. 2d 838, 842 (D. Md. 2004) ("[D]isparaging remarks made by a supervisor do not state an adverse employment action.").

Plaintiff also alleges that "[p]rior to her complaint, [she] was given challenging assignments that drew on her education and experience. After her complaint, [she] was frequently not given any assignments." Doc. No. 1 ¶ 21. Although a change in job responsibilities could conceivably constitute a materially adverse employment action, Plaintiff has not plausibly alleged that Defendant's actions "impeded her ability to advance, or had any

tangible impact on her career." *Bailey v. Ares Grp., Inc.*, 803 F. Supp. 2d 349, 357 (D. Md. 2011); *see also Tawwaab*, 729 F. Supp. 2d at 784 ("[A] change in job responsibilities . . . does not constitute a materially adverse action if the new tasks 'are not dirtier, more arduous, less prestigious, objectively inferior, or possessing of any analogous attribute.'") (quoting *Stephens v. Erickson*, 569 F.3d 779, 791 (7th Cir. 2009)). In most cases, including those cited by Plaintiff, courts have held that any change in job responsibilities must be substantial in order to rise to the level of adverse employment action. *See, e.g.*, *Patane v. Clark*, 508 F.3d 106, 115-16 (7th Cir. 2007) (allegation that supervisor removed virtually all of plaintiff's job functions sufficiently pled the existence of materially adverse action); *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (holding that "extraordinary reduction in responsibilities that persisted for years" could constitute adverse employment action); *Edwards v. E.P.A.*, 456 F. Supp. 2d 72, 87 (D.D.C. 2006) (evidence that employee's duties eroded, including that he was "stripped" of all duties as a coordinator and manager, could be sufficient to establish the existence of adverse employment action). Plaintiff's vague claim that she "was frequently not given any assignments" is insufficient to support a claim of adverse employment action. Finally, Plaintiff's allegation utterly fails to specify *when* her responsibilities changed in relation to her filing of the December 6, 2010 complaint. Therefore, she has failed to create a plausible inference that a causal connection exists between the protected activity and the alleged adverse action.

Plaintiff also alleges that on April 13, 2011, she "received a written warning and a one day suspension." Doc. No. 1 ¶ 22. Plaintiff does not specify her employer's purported reasons for the warning and suspension. Regardless, as with the allegations of the change in assignments, Plaintiff has failed to set forth sufficient facts that plausibly support the existence of adverse employment action. In particular, there is no indication from Plaintiff's Complaint that the warning and one day suspension had a tangible impact on her career. Furthermore, given that

more than four months passed between the December 6, 2010 complaint and the suspension, the Court cannot reasonably infer any connection between the protected activity and adverse action. "The Fourth Circuit has found that a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke v. DynCorp Int'l LLC*, No. JFM-12-3267, 2013 WL 4495817, at *6 (D. Md. Aug. 20, 2013) (quoting *King v. Rumsfeld*, 328 F.2d 145, 151 n.5 (4th Cir. 2003)).

The third and final time Plaintiff alleges that she engaged in protected activity was on April 14, 2011, when she filed a sex and retaliation complaint with the EEOC. Doc. No. 1 ¶ 23. Plaintiff alleges that since filing her EEOC complaint, she "is no longer given important assignments"; her duties and responsibilities are "limited to assisting other network engineers when they encounter problems, for which [she] receives no official credit"; she is "no longer invited to important meetings that are attended by her colleagues"; when she does obtain assignments, "her requests for approval are ignored by management, which hampers [her] ability to complete [them]"; and she has been the target of "disparaging e-mails from her colleagues and management." *Id.* ¶¶ 24-28. Plaintiff's complaints that she does not receive sufficient credit for her work, is ignored by management, and is subjected to criticism are the type of trivial harms that do not constitute materially adverse employment actions. *Burlington*, 548 U.S. at 68. Her remaining, vague allegations concerning changes in the quality of her assignments and participation in meetings are insufficient to support the existence of a materially adverse employment action. Furthermore, Plaintiff has not specified the timing and duration of any of the complained-of actions such that the Court can plausibly infer a causal connection between them and the filing of the EEOC complaint.

In sum, Plaintiff has failed to set forth sufficient facts supporting the existence of any materially adverse employment actions and a causal connection between those actions and her

protected activities.  Plaintiff has not expressly requested leave to amend her Complaint in the

event the Court grants Defendant's Motion.  Plaintiff states without elaboration in her opposition

brief that Defendant's actions "affected her career progression" and that following her

complaints she "frequently sat around bored with nothing to do because she was not given any

assignments."  Doc. No. 7 at 4-5.  In light of Plaintiff's claims that her job responsibilities were

affected, it is at least conceivable that she could set forth sufficient facts in support of a

retaliation claim.  Accordingly, the Court will dismiss Plaintiff's claims without prejudice and

grant her fourteen days from the date this Opinion and accompanying Order are docketed to file

an amended complaint which cures the deficiencies identified herein.  *See* Fed. R. Civ. P.

15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Failure to

timely file an amended complaint that cures these deficiencies will result in the dismissal of

Plaintiff's claims with prejudice.

## IV.     CONCLUSION

For the foregoing reasons, PGCCC's Motion to Dismiss will be GRANTED-IN-PART

and DENIED-IN-PART.  A separate Order will follow.

November 7, 2013                                                                    /s/
      Date                                              Alexander Williams, Jr.
                                                        UNITED STATES DISTRICT JUDGE